FILED
 2023 Nov-15  PM 01:39
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JANE DOE, a minor who sues by and through her guardian and next friend, MARY DOE, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| JASON WATTS and BRIAN CLAYTON, | ) ) ) |
| Defendants. | ) |

Civil Action No. 5:23-cv-360-CLS

## MEMORANDUM OPINION

The claims alleged in this action grew out of an altercation among students of James Clemens High School that occurred in a school bus during December 2022. A minor student, "Jane Doe," who sues by and through her mother, "Mary Doe," refused another student's demand to move from her seat. An argument ensued, and it became so heated that the intervention of school administrators was required. Plaintiff asserts claims under 42 U.S.C. § 1983 against school administrators Jason Watts and Brian Clayton for violation of her daughter's due process and equal protection rights. In addition, plaintiff alleges state law claims of negligence and wantonness against the same defendants, and a claim for assault against Jason Watts. The following opinion addresses each defendant's motion to dismiss. *See* doc. nos.

19 (Watts) and 23 (Clayton).

## I.  PLAINTIFF'S ALLEGATIONS

On the date of the events leading to this action, Jane Doe was a student at James Clemens High School who, "[d]ue to a variety of conditions," was "a special education student with an individual education plan (IEP)."[1] At the conclusion of the school day on Wednesday, December 14, 2022, she boarded a school bus.[2] She sat next to a friend, "Minor X," but another student, "Minor Y," demanded that she vacate the seat.[3] Jane Doe "began arguing" with "Minor [Y]."[4] Jason Watts, the school's Assistant Principal and Athletic Director, approached the students.[5] Brian Clayton, the Principal of James Clemens High School, "was standing at the front of the bus watching the entire exchange."[6]

Minor Y punched Jane Doe in the stomach.[7] Watts escorted Minor Y from the bus.[8] Other students began filming the altercation.[9] Watts reentered the bus as Jane

---

[1] Doc. no. 17 (First Amended Complaint), ¶ 12.

[2] *Id.*, ¶ 13.

[3] *Id.*, ¶ 14.

[4] *Id.* (alteration supplied). The amended complaint identifies this student as "Minor Z," but when that allegation is read in context it clearly appears that the reference is a typographical error. See, for example, the text accompanying note 16, *infra*.

[5] *Id.*

[6] *Id.*, ¶ 16.

[7] Doc. no. 17 (First Amended Complaint), ¶ 17.

[8] *Id.*

[9] *Id.*, ¶ 18.

Doe was trying to exit.[10] Watts "grabbed her wrist and pushed her back into one of the bus seats."[11] Watts then "pushed his forearm into Jane Doe's face forcing her head back into the seat."[12] Jane Doe bit Watts's arm.[13] Watts "began punching Jane Doe in the face with a closed fist."[14] Neither defendant summoned the school resource officer ("SRO").[15]

Another student, "Minor Z," "jumped on Watts's back, screamed at him to stop, and yelled 'you should not hit a woman.'"[16] Watts screamed at Minor Z, and pointed his finger in her face.[17] Principal Clayton then "escorted Watts from the scene so that pictures could be taken of the bite mark and asked the SRO to arrest Miss Doe."[18] The SRO placed handcuffs on Jane Doe, and put her into a police car for transportation to the police station.[19]

Mary Doe, Jane Doe's mother, was told that her daughter had been taken to the police station, but was not informed that Watts had punched her in the face, or that

---

[10] *Id.*, ¶ 19.
[11] *Id.*
[12] *Id.*, ¶ 20.
[13] Doc. no. 17 (First Amended Complaint), ¶ 21.
[14] *Id.*, ¶ 22.
[15] *Id.*, ¶ 23.
[16] *Id.*, ¶ 25.
[17] *Id.*, ¶ 26.
[18] *Id.*, ¶ 27.
[19] Doc. no. 17 (First Amended Complaint), ¶ 29.

Jane required medical attention.[20]  Following Jane's release from police custody, her mother took her to an urgent health care facility for a medical examination.[21]

Jane Doe subsequently was suspended from James Clemens High School and placed in "an alternative school setting."[22]

## II.  STANDARD OF REVIEW

The relevant portion of the Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  That statement must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S. at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

---

[20] *Id.*, ¶ 31.

[21] *Id.*, ¶ 32.

[22] *Id.*, ¶¶ 39-40.

To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a compliant is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 409 F.3d at 157–58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they

> are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alteration supplied). Based upon *Iqbal*, the Eleventh Circuit has instructed courts to use a two-step framework to test the sufficiency of the pleadings:

> First, we identify the allegations that are "no more than conclusions." Conclusory allegations are not entitled to the assumption of truth. Second, after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations "plausibly give rise to an entitlement to relief."

*McCullough v. Finley*, 807 F.3d 1324, 1333 (11th Cir. 2018).

### III.  DISCUSSION OF PLAINTIFF'S FEDERAL CLAIMS

Plaintiff contends that Jason Watts and Brian Clayton each deprived her daughter of rights protected by the Fourteenth Amendment of the United States Constitution.[23] Those claims are based upon 42 U.S.C. § 1983, which provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity

---

[23] *See* doc. no. 17 (First Amended Complaint), ¶¶ 45-47.

or other proper proceeding for redress . . . .[24]

Notwithstanding the apparent breadth of the foregoing language, whenever an official of a state, county, or municipality is sued under 42 U.S.C. § 1983 in a personal, or "individual capacity," as opposed to being sued as a representative of his state governmental employer, the official is entitled to invoke the so-called "doctrine of qualified immunity" as a defense. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). That doctrine protects state governmental officials whose conduct violated "no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also*, *e.g.*, *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (same); *Lassiter v. Alabama A. & M. University*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*) (same). Stated differently, the doctrine of qualified immunity shields state, county, and municipal officials from suit for money damages if a reasonable officer could have believed that his action was lawful, in light of clearly established law and the

---

[24] The origin of this statutory language lies in the blood shed during the Civil War and the tragically-brief era of "Reconstruction" that followed. The Reconstruction-era Congress enacted legislation to protect the freedoms granted to the recently-emancipated slaves. One such piece of legislation was the Ku Klux Klan Act of 1871, which "targeted the racial violence in the South undertaken by the Klan, and the failure of the states to cope with that violence." *Jamison v. McClendon*, 476 F. Supp. 3d 386, 399 (S.D. Miss. 2020) (citation omitted). The first section of that Act was codified as the statute quoted in text.

information possessed by the officer. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Even law enforcement officials who 'reasonably but mistakenly conclude that [their challenged actions were lawful]' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson*, 483 U.S. at 641) (alteration supplied).

It has been said that the doctrine attempts to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The doctrine initially requires a defendant to "prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). Plaintiff does not contest this element.

Even so, there are two additional requirements. The first requires a court to ask whether the facts, viewed "in the light most favorable to the party asserting the injury," show that "the [defendant]'s conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If that question is answered affirmatively, the court then must proceed to analyze the second aspect of the two-part inquiry: *i.e.*, "whether the right was clearly established." *Id.*

A.      **Assistant Principal Jason Watts**

Plaintiff alleges that defendant Jason Watts's actions amounted to excessive corporal punishment that violated her daughter's Fourteenth Amendment substantive due process rights.[25]  The Eleventh Circuit set out principles for evaluating a claim of excessive corporal punishment in *T.W. ex rel. Wilson v. School Board of Seminole County, Florida*, 610 F. 3d 588 (11th Cir. 2010), saying:

> The Due Process Clause protects individuals against arbitrary exercises of government power, but "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" To be arbitrary in the constitutional sense, an executive abuse of power must "shock[ ] the conscience." "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." The Due Process Clause does not "impos[e] liability whenever someone cloaked with state authority causes harm." "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Both this Court and the Supreme Court have "said repeatedly that the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action. Nevertheless, "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment . . . may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior."

---

[25] In his reply, Watts contends that his conduct was not corporal punishment; rather, he was intervening to break up a fight and was acting in self-defense.  Doc. no. 41, at 7.  Regardless of how Watts's conduct is characterized, the court concludes that no constitutional violation occurred, as discussed *infra*.

*Id*. at 598 (citations omitted).

"Corporal punishment in schools typically refers to the application of physical force by a school official to punish a student for some type of school-related conduct." *Hatfield v. O'Neil*, 534 F. App'x 838, 844 (11th Cir. 2013) (citing *Ingraham v. Wright*, 430 U.S. 651, 661 (1977)).

> Many corporal punishment cases involve what might be called traditional applications of physical force, such as where school officials, subject to an official policy or in a more formal disciplinary setting, mete out spankings or paddlings to a disruptive student. Not all corporal punishment cases arise under those circumstances, however, and may involve less traditional, more informally-administered, and more severe punishments.

*Neal ex rel. Neal v. Fulton County Board of Education*, 229 F.3d 1069, 1072 (11th Cir. 2000). Plaintiff's allegations fall within the latter category.

A claim of excessive corporal punishment has "an objective and subjective component, both of which must be met before a school official may be subject to liability." *Id.* at 1075 n.3. The punishment must have been "obviously excessive" as an objective matter and the school official must have "subjectively intended to use that obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result." *Id.* at 1075. The question of whether the punishment was obviously excessive requires consideration of the totality of the circumstances, including: the need for application of corporal punishment; the

relationship between the need and the amount of punishment administered; and, the extent of the injury inflicted. *Id.* (A plaintiff's disability also is relevant, but here, plaintiff has not pled that Jane Doe had a disability; only that she was a special education student. *See T.W.*, 610 F.3d at 599-600.)

The Eleventh Circuit's decision in *Peterson v. Baker*, 504 F.3d 1331 (11th Cir. 2007), also is instructive when attempting to evaluate whether plaintiff's allegations can withstand Watts's motion to dismiss. As in this case, *Peterson* arose from a "hostile encounter" between a teacher and a student. There, after a disruptive student forcibly rebuffed a teacher's efforts to prevent the student from leaving the classroom, the teacher grabbed and squeezed the student's neck. The teacher's response left visible marks on the student's neck. *Id.* at 1334-35. The Eleventh Circuit held on the basis of those facts that the "justification for some corporal punishment was considerable given that the student repeatedly disobeyed the teacher's command to be seated and given that the student first touched the teacher by forcing her hand from the doorframe." *Id.* at 1337. The appellate court also considered the fact that the student suffered only minor, temporary injuries to be significant, and concluded that, based upon the totality of circumstances, the punishment was not "obviously excessive." *Id.* at 1338.

This court reaches the same conclusion. While Watts's act of hitting Jane Doe

11

in the face was certainly inappropriate, the facts as alleged show justification for the application of corporal punishment. As in *Peterson*, Watts's conduct was a response to Jane Doe's act of biting his arm. Additionally, as alleged in the amended complaint, the extent of Jane Doe's injuries was minor. The court finds that consideration of the totality of circumstances leads to the conclusion that the force applied by Watts was not "obviously excessive" and, therefore, no constitutional violation — *i.e.*, conduct that shocks the conscience — occurred here.

This conclusion is bolstered by a review of other corporal punishment cases within this circuit. In *T.W.*, the Eleventh Circuit held, on review of a district court order granting summary judgment, that a special education teacher's treatment of a student with pervasive developmental disorder was "not obviously excessive in the constitutional sense." 610 F.3d at 602. That teacher restrained the student by "taking him down," sitting on him, and holding the student's arms behind his back, in attempts to restore order, maintain discipline, or protect the student from self-injurious behavior. *Id.* at 600. The Eleventh Circuit considered the totality of the circumstances — including that the student suffered psychological injury, but only transient physical pain — and concluded that the teacher's conduct was "not so arbitrary and egregious as to support a complaint of a violation of substantive due process." *Id.* at 601-02.

In contrast, the Eleventh Circuit held that a student stated a claim for a violation of his substantive due process rights for excessive corporal punishment in *Neal ex rel. Neal v. Fulton County Board of Education*, 229 F.3d 1069 (11th Cir. 2000). In that case, the plaintiff hit another student with a weight lock, initiating a fight. A teacher observed the incident, and rather than stopping the fight, struck the plaintiff in the eye with the weight lock, causing the eye to be knocked out of its socket. *Id.* at 1070. The Eleventh Circuit held that the teacher's use of force was obviously excessive and presented a reasonably foreseeable risk of serious bodily injury, such that the plaintiff had adequately alleged a constitutional violation. *Id.* at 1076.

The Eleventh Circuit upheld the denial of qualified immunity to a principal who repeatedly struck a student with a metal cane in *Kirkland ex rel. Jones v. Greene County Board of Education*, 347 F.3d 903 (11th Cir. 2003). The principal had summoned the student to his office for disciplinary reasons. *Id.* at 904. The Eleventh Circuit stated that "[r]epeatedly striking a thirteen-year-old student with a metal cane, including once on the head as he was doubled over protecting his chest, when he was not armed or physically threatening in any manner," was obviously excessive under the circumstances and presented a reasonably foreseeable risk of serious bodily injury. *Id.*

Plaintiff also relies on the unreported report and recommendation of United States Magistrate Judge Terry F. Moorer in *Terry v. Russell County Board of Education*, Case No. 3:14cv953-WKW-TFM, 2015 WL 13736622 (M.D. Ala. Sept. 28, 2015). There, the plaintiff, a disabled high school student, was involved in a verbal and physical altercation with a teacher, resulting in serious, permanent physical and emotional injuries to the plaintiff. The teacher forced the plaintiff from the classroom, pinned him against a wall and on the ground, and choked and kicked him. *Id.* at * 2. Other teachers intervened to pull the teacher off the plaintiff, following which, the teacher continued to kick the plaintiff, and yelled "I'm going to beat you within an inch of your life!" Based on those facts, the magistrate judge found that the plaintiff had alleged sufficient facts to show a violation of a clearly established constitutional right.

This case presents allegations that are closer to *Peterson* and *T.W.* than to *Neal, Kirkland,* and *Terry*, especially since Jane Doe suffered only minor injuries, and Watts's punishment of her was in response to her act of biting him. Accordingly, the court concludes, upon review of the totality of the circumstances and Eleventh Circuit precedent, that plaintiff's § 1983 claim against Assistant Principal Jason Watts for excessive corporal punishment is due to be dismissed.[26]

---

[26] Plaintiff states in paragraph 45 of the amended complaint that Clayton and Watts "violated Plaintiff Jane Doe's rights under 42 U.S.C. § 1983 and her FOURTEENTH AMENDMENT

## B.   Principal Brian Clayton

Plaintiff alleges that Clayton's failure to take action to prevent Watts's alleged assault of Jane Doe violated Jane Doe's constitutional rights.

> It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior.  However, supervisors are liable under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation."  A causal connection can be established by, *inter alia*, "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.
>
>     * * * *
>
> A failure to stop claim under a theory of supervisory liability only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it.

*Keating v. City of Miami*, 598 F.3d 753, 762, 765 (11th Cir. 2010) (citations omitted).

Plaintiff's claim against Clayton must fail because, as discussed in the preceding part of this opinion, she has not alleged facts sufficient to show that a constitutional violation occurred.  Accordingly, Clayton's alleged failure to stop

---

EQUAL PROTECTION rights by failing to protect her" from Watts's alleged assault.  Doc. no. 17, at 6 (capitalization in original).  Plaintiff did not, however, allege any facts that would support an equal protection claim, and she did not present argument on that claim in her response opposing dismissal.  *See* doc. no. 39.

Watts from hitting Jane Doe is not actionable under § 1983.

In addition, the first heading of the argument section of plaintiff's opposition to Clayton's motion to dismiss suggests that she also is alleging a procedural due process claim:

> Plaintiff Sufficiently Pled a Constitutional Violation Under 42 U.S.C. § [1983] by Brian Clayton for his Failure to Intervene to Stop Watts from Punishing Doe by Continuing to Punch her in the Face, then Purs[u]ing Punishment of Jane Doe Denying her Procedural Due Process.

Doc. no. 40 (Plaintiff's Response to Defendant Brian Clayton's Motion to Dismiss), at ECF 4 (alteration supplied).[27]  However, the court can discern only one part of one sentence of the argument that could pertain to a procedural due process claim:

> Clayton, the principal, with full supervisory authority over Watts, was standing steps away, watching it occur without taking any action to stop it, and then immediately *supported* Watts, vilified and blamed Jane Doe to the media, *then punished her by excluding her from the school*.

*Id.*, at ECF 6 (second emphasis supplied).  The amended complaint, containing the following allegations, does not shed much more light on this claim:

> 39.  Jane Doe was immediately suspended and was not allowed to return to her classes at James Clemens for weeks, in violation of her rights and multiple laws as detailed *infra*.

---

[27] **NOTE**: "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically (*i.e.*, "Electronic Case Filing").  When the court cites to pagination generated by the ECF header, it will, as here, precede the page number(s) with the letters "ECF."

> 40. After her parents repeatedly attempted to place her back in school, just recently, as of January 2023, Ms. Doe has been placed in an alternative school setting and is now required to "earn" her way back into school, as if she was at fault and not Defendant Watts for his repeated punching her in the face on the bus.

Doc. no. 17, at 5. Clayton argues that plaintiff's allegations are insufficient to state a claim for deprivation of Jane Doe's procedural due process rights.

The Supreme Court has held that:

> [s]tudents facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

*Goss v. Lopez*, 419 U.S. 565, 581 (1975). As Clayton correctly observes, plaintiff has failed to allege the length of Jane Doe's suspension,[28] or that she did not receive the minimum required procedural protections. The court concludes that plaintiff has failed to state a claim upon which relief may be granted with respect to a § 1983 claim based upon an alleged denial of Jane Doe's procedural due process rights.

### IV.  DISCUSSION OF PLAINTIFF'S STATE LAW CLAIMS

Plaintiff has asserted state law claims of assault against Watts, and negligence,

---

[28] Clayton also notes that Alabama schools typically close for two weeks or more for the Christmas and New Year holidays. Doc. no. 42 (Defendant Brian Clayton's Reply to Plaintiff's Response to Motion to Dismiss), at 4 n.4. The incident occurred on December 14, 2022, and, according to the amended complaint, Jane Doe returned to school sometime during January of 2023.

17

and recklessness or wantonness against both defendants. Each defendant asserts that he is entitled to state-agent immunity for those claims.

In cases where the federal district court has original jurisdiction over some of the claims, the court also has discretion to entertain state claims that are supplemental to the federal claim. *See* 28 U.S.C. § 1367(a). The district court may decline to exercise supplemental jurisdiction when:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) *the district court has dismissed all claims over which it has original jurisdiction*, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 n.7 (1988) (alteration supplied).

Here, plaintiff's federal claims have been eliminated. Accordingly, this court

declines supplemental jurisdiction over the remaining state law claims, and exercises its discretion to dismiss those claims.

## V.  CONCLUSION

A separate order, consistent with this memorandum opinion, will be entered contemporaneously herewith.

**DONE** this 15th day of November, 2023.

_____
Senior United States District Judge